FILED
2022 Aug-08  AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **SUSAN RENEE BENEFIELD PARROTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **4:20-cv-01636-LSC** |
| **v.** | ) | |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

The plaintiff, Susan Renee Benefield Parrott ("Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). Plaintiff timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was 44 years old at the time of her DIB application and 47 at the time of the Administrative Law Judge's ("ALJ's") decision. (*See* Tr. 30, 216.) She received a GED and a certificate from the Birmingham School of Massage. (Tr. 60,

221.) Her past work includes experience as an accounting clerk, cashier II, furniture rental consultant, salesperson-general hardware, management trainee, manager-retail store, and secretary. (Tr. 67-68, 221.) Plaintiff claims that she became disabled on January 2, 2018. (Tr. 216.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; see also *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in  20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the

record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id*.

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id*. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *Id*.

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can

make an adjustment to other work. *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id*.; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, then the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Plaintiff has not engaged in SGA since January 2, 2018, the alleged onset date of her disability. (Tr. 22.) According to the ALJ, Plaintiff's chronic obstructive pulmonary disease ("COPD"), degenerative disc disease ("DDD"), post-traumatic stress disorder ("PTSD"), and anxiety are "severe impairments." *Id*. The ALJ also found that Plaintiff's migraine headaches ("migraines"), which she found to be non-severe. (*Id* at 22-23.) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in n 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 23.) The ALJ determined that Plaintiff has the following RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations: She can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; have occasional exposure to temperature extremes, humidity, vibration, dust, odors, fumes, and pulmonary irritants; have no exposure to unprotected heights or hazardous machinery; understand, remember, and carry out simple instructions; have occasional contact with the general public; and would need changes in the work environment to be gradually and infrequently introduced.

(Tr. 24.)

According to the ALJ, Plaintiff is unable to perform any of her past relevant work. (Tr. 28.) The ALJ also determined that Plaintiff was a "younger individual age 18-44" at 44 years old on the alleged onset date, has at least a high school education, and is able to communicate in English, as those terms are defined by the regulations (*Id.* at 29.) The ALJ determined that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocational Rules as a guideline for finding that there are jobs in the national economy with a significant number of positions that Plaintiff is capable of performing the requirements of representative occupations such as addresser, document preparer, and table worker. (*Id.*) The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 2, 2018, through the date of this decision." (Tr. 30.)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act ("Act") is a narrow one. The scope of its review is limited to determining (1)

whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and the 'possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence" *Parker v. Bowen,* 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520. 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III. Discussion

Plaintiff argues that the ALJ's decision should be remanded for two reasons: (1) the finding that Plaintiff can perform sedentary work is not supported by substantial evidence and is not supported by the consultative evaluation, and (2) the ALJ failed to request a Mental Consultative Exam ("MCE"). (Doc. 10 at 17-27.)

### A. Whether substantial evidence supports the ALJ's RFC determination

The Plaintiff bears the burden of proving she was disabled within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912(a), (c); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ considered Plaintiff's disability claim using the five-step sequential evaluation process. To determine if Plaintiff could perform his past relevant work at step four or other work at step five, the ALJ had to first assess Plaintiff's RFC. An

individual's RFC represents the most he can still do, despite his limitations, in a work setting. 20 C.F.R. § 404.1545(a)(1). In order to determine an individual's RFC, the ALJ assesses all of the relevant evidence in the record, including medical reports prepared by a physician or other healthcare provider, as well as more subjective descriptions and observations of an individual's limitations. *Id.* § 404.1545(a)(3). Moreover, the evaluator considers not only the impairments classified as "severe" but the "limiting effects" of all conditions when making a judgment about an individual's RFC. *Id.* § 404.1545(e).  A reviewing court will affirm the ALJ's RFC assessment if it is supported by the objective medical evidence.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive…" *See* 42 U.S.C. § 405(g) (emphasis added). "Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court has explained that the threshold for such evidentiary sufficiency "is not high," "more than a mere scintilla," and only requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).

Here, Plaintiff provided evidence, as recognized by the ALJ, of her severe impairments, including COPD, DDD, PTSD, and anxiety. The evidence reflects records from doctors′ appointments with diagnoses and treatments for each of these impairments. (Tr. 35-36, 42, 47-49, 80-84, 88-89, 95, 295-97, 324-44, 347-48, 362-68, 373, 376, 378-79, 381-91, 398-413, 440-45, 465-67, 536, 539, 541-44, 547-554, 579-83, 586-88, 592-623, 626-43, 663-65.) The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in making her RFC determination. (Tr. 25.) Plaintiff challenges the RFC determination based on the ALJ's finding that Dr. Ammar Saem Aldaher's opinion that Plaintiff could sit for only five hours was less persuasive. (Doc. 10 at 17-22; Tr. 27.)

New regulations came into effect in 2017, which govern this case. These changes revised 20 C.F.R. Parts 404 and 416, expanding the list of acceptable medical sources who can be medical consultants, who can provide medical opinions, and who can provide objective medical evidence to establish the existence of an impairment. *See* 81 Fed. Reg. 5844 (Jan. 18, 2017) and 82 Fed. Reg. 15,132 (Mar. 27, 2017). Prior to March 27, 2017, the regulations mandated that the Commissioner give more weight to medical opinions from treating sources and give it controlling weight if not inconsistent with the record. *See* 20 C.F.R. §§ 404.1527(c)(2);

416.927(c)(2); 404.1520c; 416.920c. With the regulatory changes taking place on March 27, 2017, the Social Security Administration no longer defers or gives "any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The new regulation articulated that the most important factors the Social Security Administration considers when evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2); 416.920c(a), (b)(2). Less important factors that are still considered are the relationship with the claimant, length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c); 416.920c(c).

The regulation describes supportability as "the more relevant the objective medical evidence and supporting explanations…are to support…medical opinion(s) or prior medical finding(s), the more persuasive the medical opinions…will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). It further explains that "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s)... will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

Plaintiff argues that the ALJ erred by not accepting Dr. Aldaher's opinion on the limitation of sitting only five hours per day and asserts that limiting Plaintiff to sedentary work ultimately excludes light work. (Doc. 10 at 17-18.) As defined in Social Security Ruling 83-10, sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles [and] walking and standing are required occasionally." *Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10 (S.S.A. 1983) ("SSR 83-10"). SSR 83-10 defines "occasionally" as "occurring from very little up to one-third of the time." *Id.* The ruling further explains that based on this definition of "occasionally," sedentary work should generally require no more than about two hours of walking or standing in an eight-hour workday with approximately six hours of sitting. *Id.*

Light work, on the other hand, is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds...[and] requir[ing] a good deal of walking or standing." *Id.* The ruling defines "frequent" as "occurring one-third to two-thirds of the time." *Id.* Therefore, the full range of light work "requires standing or walking, off and on, for a total of approximately 6 hours

of an 8-hour workday," where "[s]itting may occur intermittently during the remaining time." *Id.* Stooping is only required occasionally with light work. *Id.*  This section also further clarifies that a job will also be placed in the light work category if it "involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls." *Id.* The primary difference between sedentary and light work, according to SSR 83-10, is the "good deal of walking or standing" required by light work as opposed to the occasional requirement of walking or standing in sedentary work. *Id.*

Plaintiff challenges the ALJ's RFC determination based on the finding that Dr. Aldaher's opinion that Plaintiff could not sit for more than five hours a day. (Doc. 10 at 17-22.) Through the consultative exam performed on November 19, 2019, Dr. Aldaher, the Commissioner's examining physician, reported that Plaintiff's lungs were clear on auscultation, she had a regular heart rate, no abnormalities in her extremities, normal range of motion in the extremities and back, and normal gait. (Tr. 664.) Dr. Aldaher's impression was fibromyalgia, neck pain, back pain, dyslipidemia, anxiety, and COPD. (Tr. 664.) In addition to the consultative exam, Dr. Aldaher completed a Medical Statement of Ability to do Work-Related Activities and found that Plaintiff could sit for five hours, stand for five hours, and walk for five hours in an eight-hour workday. (*Id.* 672-77.) Furthermore, Dr. Aldaher noted that

she could do all of the above without interruption. (*Id.* at 673.) The medical statement also reflected Plaintiff's ability to walk without a cane and lift and/or carry up to fifty pounds frequently and up to 100 pounds occasionally. (*Id.* at 672-73.) Dr. Aldaher opined that Plaintiff could frequently reach, handle, finger, feel, push, and pull with both hands frequently as well as operate foot controls with both hands frequently. (Tr. 674.) The medical statement also shows that Dr. Aldaher believed that Plaintiff could frequently climb stairs, ramps, ladders, or scaffolds, balance, stoop, kneel, crouch, and crawl as well as frequently handle exposure to environmental conditions such as dust, extreme temperatures, and unprotected heights. (Tr. 675-76.) Dr. Aldaher documented that Plaintiff could perform all the activities on the list, such as shopping, traveling without a companion, preparing simple meals, cand caring for personal hygiene. (Tr. 677.) Finally, when asked whether Plaintiff's limitations described in the medical statement lasted or would last for twelve consecutive months, Dr. Aldaher responded by checking "no." (Tr. 677.)

The ALJ explained that she found Dr. Aldaher's opinion "somewhat persuasive" and that she found "no indication on Dr. Aldaher's assessment that the claimant would not be able to perform a seated job." (Tr. 27.) Furthermore, the ALJ added, "Dr. Aldaher's opinion that the claimant could only sit for five hours is less

persuasive than the remainder of his opinion because it is inconsistent with his exam findings." (Tr. 27.)

The ALJ then turned to consider the opinions of Dr. Robert Estock and Dr. Thomas G. Amason, the State Agency medical non-examining consultants, and she found them to be persuasive. (Tr. 27-28.) Dr. Amason assessed Plaintiff's physical RFC, and Dr. Estock did the same for Plaintiff's mental RFC. (Tr. 86-91.) Dr. Amason found that Plaintiff could stand or walk (with normal breaks) for a total of about six hours in an eight-hour workday, and she could sit (with normal breaks) for six hours in an eight-hour workday. (Tr. 87.) He also determined that based on the seven strength factors of the physical RFC, Plaintiff demonstrated the maximum sustained capability to perform light work, thus also including the ability to perform work at the lower sedentary level. (*Id.* at 92.) Both physicians signed the determination finding that their review of the evidence indicated that Plaintiff could perform light work and was not disabled. (Tr. 92-94.)

Dr. Amason provided additional explanation for his findings. (Tr. 88-89.) With regard to Plaintiff's fibromyalgia, Dr. Amason recognized that Plaintiff's condition was stable, and she was able to ambulate independently. (Tr. 88.) He also noted that her records showed a normal motor examination, sensory exam, and gait, but her cervical spine and thoracic spine exam showed tenderness. (Tr. 88.) In

discussing her back injury and arthritis, Dr. Amason again noted tenderness and Plaintiff's herniated nucleus pulposus ("HNP") and DDD. (*Id.*) Her exam, however, also revealed normal gait and motor strength and no muskuloskeletal limitations. (*Id.*) Regarding nerve damage, Dr. Amason remarked that neurological findings are within normal limits. (*Id.*) Dr. Amason also discussed Plaintiff's COPD and noted that her cardio studies and stress testing were normal. (Tr. 89.) A chest x-ray revealed active pulmonary disease, but "no cardiomegaly, no lymphadenopathy, and no diaphragm abnormalities." (*Id.*) An exam of her lungs showed normal breath sounds, "good air movement, and expiratory wheezing." (*Id.*) Ultimately, Dr. Amason determined that Plaintiff's COPD history did not meet the listing level, but it was "consistent with a moderate COPD impairment." (*Id.*) Overall, Dr. Amason concluded that the "objective findings are consistent with a moderate physical impairment," but he noted that her activities of daily living included cooking a full coarse meal once a week, cleaning house, doing laundry, mowing the grass, driving, grocery shopping, handling money, and attending church. (*Id.*) This evidence supports the ALJ's finding that Plaintiff could perform work at the sedentary level with the additional limitations the ALJ included in Plaintiff's RFC.

The ALJ found the opinions of Dr. Estock and Dr. Amason persuasive. (Tr. 27-28.) The ALJ determined that "Dr. Amason's opinion was consistent with the

record at the time rendered, and is thus generally persuasive." (*Id.*) She also found that Dr. Estock's analysis was "adequately explained and supported with objective evidence," and his opinion was "consistent with the record as a whole." (*Id.* at 28.)

While the Commissioner gives weight to the opinion of medical sources concerning impairments, ultimately, the responsibility of determining RFC is reserved to the Commissioner. *See* 20 CFR §§ 404.1527(d)(2), 404.1546(c). The ALJ favored Plaintiff in her RFC determination, and accounted for Dr. Aldaher's RFC, giving her the benefit of the doubt by limiting her to sedentary work with additional limitations rather than determining she could perform light work. (Tr. 24.)

Plaintiff contends that the ALJ erred by not providing any rationale or reference to the supporting evidence as required by SSR 96-8p; however, the ALJ provided a discussion of Plaintiff's physical and mental impairments citing specific evidence and discussing each consultative evaluation performed by the various examiners. (Tr. at 24-28). The ALJ provided substantial evidence here to support the RFC she provided. The ALJ's discussion of RFC includes reference to Plaintiff's subjective claims, a lumbar spine MRI, COPD care history, a nerve conduction velocity study, treatments for mental impairments such as anxiety, neurological treatment, a pulmonary function test, and the consultative exams performed by Dr.

Aldaher and the review of Plaintiff's record by Dr. Amason and Dr. Estock. *Id.* The ALJ further acknowledges that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." (Tr. at 25.)

In reference to subjective claims, the ALJ discusses Plaintiff's claim of experiencing "spells" and pain throughout her body causing her to lay in a reclined position most of the day. (Tr. 25, 61-62.) In the record she states that she was tested for seizures and ministrokes in relation to her spells and determined her "spells" were a side effect of one of her medications. (Tr. 61.) When asked if she was having side effects to any other medication since being taken off that medication, she said she had none. (Tr. 62.) These statements made by Plaintiff further the ALJ's determination that Plaintiff's claims of intensity, persistence, and limiting effects of these symptoms are "not entirely consistent with the medical evidence and other evidence." (Tr. at 25.)

Continuing in her assessment, the ALJ references a lumbar spine MRI performed on August 28, 2014, to assess the claims and severity of Plaintiff's DDD. (Tr. 25.) The MRI showed a left L5-S1 herniated nucleus pulposus according to Dr.

Benjamin B. Fulmer. (Tr. 297.) Because of continued complaints by the plaintiff, Dr. Richard Diethelm, ordered a nerve conduction velocity study. (Tr. 309.) During this study, Dr. Diethelm found that there was "electrophysiologic evidence indicative of a left S1 and left C6 radiculopathy." (Tr. 322.) During another exam, an x-ray showed that plaintiff's spinal cord was normal, and there were "small disc bulges at C4-5 and C5-6 but no disc herniation. (Tr. 318.) The ALJ took into consideration this medical evidence and did not discount the opinions that were supported by the record and objective evidence. (Tr. 24-28.)  The ALJ also explained that the RFC determination contained limitations "to a range of sedentary work based primarily on [Plaintiff's] subjective complaints and her nearly listing level pulmonary function tests." (Tr. 27.) Accordingly, the record shows that the ALJ accounted for the medical evidence as well as Plaintiff's subjective complaints in assessing her RFC, and substantial evidence supports the ALJ's conclusion.

Thus, the ALJ acted within her responsibility under SSR 96-8 and properly evaluated the medical opinions. There is adequate support within the record to conclude that the plaintiff would be capable of performing sedentary work. The evidence, when considered with the whole record, proves to be substantial and does not create a reasonable probability that the ALJ would change her RFC determination if the case were remanded.

### 2. The ALJ Failed to Request a Mental Consultative Evaluation

If the plaintiff's medical sources cannot or will not give the court sufficient medical evidence about an impairment to make a disability determination, the ALJ may order one or more physical or mental examinations or tests, 20 C.F.R. §§ 404.1517, 416.917; however, a consultative exam does not need to be obtained to establish certainty regarding the plaintiff's condition. *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). This is because the statute only requires substantial evidence, not absolute certainty to sustain the previous decision. *Id.* The Social Security Administration Hearings, Appeals, and Litigation Law Manual ("HALLEX") also clearly states that "an ALJ should request only the specific examination(s) or test(s) that he or she needs to make a decision." (I-2-5-20.) Therefore, if the ALJ can come to a decision based on substantial evidence as provided by the record, the examination would not be *needed*. It is mere speculation by the plaintiff that if further testing were ordered that the ALJ would change her determination.

Plaintiff cites *Reeves v. Heckler*, concluding that "it is reversible error for an ALJ not to order a consultative examination when such evaluation is necessary for him to make an informed decision." 734 F.2d 519, 522 n.1 (11th Cir. 1984). (Doc 12 at 7.) The focus of this argument, similarly, is on the word *necessary*. While it is the

ALJ's responsibility to develop a "full and fair" record, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded." *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997). Unless there are "evidentiary gaps which result in unfairness or 'clear prejudice,'" the ALJ has not erred in failing to order an MCE. *Id.* (citation omitted). Thus, the level of necessity as mentioned in *Reeves v. Heckler* must rely on whether or not there are evidentiary gaps in the record.

Furthermore, the plaintiff still carries the burden of proof, and "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about [her] own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see* 20 C.F.R. § 404.1512 (a). Plaintiff has failed to prove that there are such evidentiary gaps that resulted in unfairness or clear prejudice, or that there was additional information needed to make an informed decision.

During Dr. Estock's Mental Residual Functional Capacity Assessment, he found that Plaintiff had some understanding and memory limitations. (Tr. at 89.) Her ability to remember locations and work-like procedures was not significantly limited, nor was her ability to understand and remember very short and simple instructions. (*Id.*) However, her ability to understand and remember very detailed instructions was moderately limited. (*Id.*)

Dr. Estock also reported that Plaintiff had some limitations with sustained concentration and persistence. (Tr. 90.) He found that she was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform a consistent pace without an unreasonable number and length of rest periods. (*Id.*) She had no significant limitations, however, in her ability to carry out short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, and make simple work-related decisions. (*Id.*)

Plaintiff also has moderate social interaction limitations as well. (*Id.*) Dr. Estock opined that she was moderately limited in her ability to interact with the general public and her ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* In relation to her ability to ask simple questions or request assistance, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness, she was found to be not significantly limited. *Id.*

As for adaptation limitations, Dr. Estock determined that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting. (Tr. 91.) She has no significant limitations, however, in her ability to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently from others. (*Id.*) Dr. Estock concluded that Plaintiff's activities of daily living and "objective findings are consistent with a moderate mental impairment." (Tr. 85.)

The record also includes evidence of Plaintiff's psychiatric history and treatment where she complains of and is assessed for anxiety, depression, and PTSD. (Tr. 35-40, 372-74, 376-91, 534-58, 579-83, 588-623, 629-31, 633-35, 637-39, 642-43.) Multiple times throughout the record Plaintiff has shown improvement in and/or denied depression and anxiety. (Tr. 36, 382-83, 593, 605, 620.)

The record shows that on August 20, 2018, during her visit with River Region Psychiatric Associates, Plaintiff "reports doing much better with the current medication combination… and reports minimal anxiety or depression." (Tr. 593.) The report also shows that her PTSD "is much improved" but she still has occasional panic attacks. (*Id.*)

On March 15, 2019, Plaintiff reported to Northside Medical Associates that she has "no depression, no sleep disorders, and no alcohol abuse." (Tr. 642.) At this

appointment, Plaintiff was found to have moderate recurrent depression and PTSD and was referred to Dr. Whitt and Dr. Strong for evaluation. (*Id.* at 643*.*) During a follow-up appointment with River Region Psychiatry Associates on April 18, 2019, Plaintiff stated that her "[m]ood is gradually improving and has been less anxious and depressed with the increase in Paxil," but her "PTSD is still severe" to the point that she is "[a]ble to go out more, but still doesn't like large crowds." (*Id.* at 613.) In the plaintiff's visit with River Region Psychiatry Associates on January 23, 2020, Plaintiff had seen improvements in her mood and had been "less anxious and depressed." (*Id.* at 36.)

The ALJ discussed Dr. Estock's assessment as well as Plaintiff's treamtent records at River Region Psychiatriay Association and Tri-City Neurology. (Tr. 26-28.) Plaintiff failed to show that there is an evidentiary gap that resulted in unfairness or clear prejudice or that additional information was needed to make an informed decision. Plaintiff further failed to discuss how an MCE would have possibly changed the ALJ's decision. The ALJ did not err in her decision not to request an MCE.

**IV. Conclusion**

Upon review of the administrative record, and considering Plaintiff's argument, this court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON AUGUST 8, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

206728